IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS B. POWELL,

      Plaintiff,

  v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, et al.

      Defendants.

NO. C12-1705 TEH

ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT

  Plaintiff Douglas B. Powell brings this action under the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Defendant Hartford Life and Accident Insurance Company ("Hartford") wrongfully miscalculated the long-term disability benefits that are due to him under his insurance policy by prorating one of the bonuses he received prior to becoming disabled over twelve months rather than over six months. Before the Court are the parties' cross-motions for summary judgment. After conducting a bench trial and carefully reviewing the administrative record, the Court GRANTS Hartford's motion for summary judgment and DENIES Powell's for the reasons given below.

**LEGAL STANDARD**

  ERISA provides that "a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). An ERISA plaintiff is entitled to a bench trial on the administrative record, in which the traditional summary judgment standard embodied in Federal Rule of Civil Procedure 56 does not apply. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir.

1  1999) (en banc), *cert. denied*, 528 U.S. 964 (1999).  Rather, such trials are governed by Rule
2  52, which provides that "the court must find the facts specially and state its conclusions of
3  law separately."  Fed. R. Civ. P. 52(a)(1).

**FINDINGS OF FACT**

Pursuant to Rule 52(a)(1), the Court makes the following findings of fact:

A.  Powell's Long Term Disability Insurance Policy

Powell is covered by a long-term disability insurance policy issued by Hartford to Cadence Design Systems, Inc., where Powell was employed as a Software Architect before becoming disabled.  Hartford both administers Powell's policy and pays benefits under it. The policy provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions."  (AR 3815.)

Under the policy, Powell is entitled to receive a Monthly Benefit equal to 70% of his pre-disability Monthly Income.  (AR 1719, 1722, 1733.)  Pre-disability Monthly Income is determined by calculating "Monthly Rate of Basic Earnings," defined as "regular monthly pay, including bonuses" at "the rate in effect on your last day as an Active Full-time Employee before becoming Disabled."  (AR 1727.)  The policy does not set out any methodology of accounting for bonuses in calculating the Monthly Rate of Basic Earnings.

B.  Powell's Claim

Powell submitted a long-term disability claim to Hartford in August 1995.  (AR 579-80.)  On April 1, 1996, Hartford approved Powell's claim, finding that as of May 13, 1995, Powell was totally disabled from performing his job due to a repetitive stress injury.  (AR 479-81.)   Hartford calculated Powell's Monthly Benefit as $3,801.95, or 70% of a pre-disability Monthly Income of $5431.35.  (AR 481.)  This figure did not include any of Powell's bonus income.

In August 1995, Cadence awarded Powell the bonus that is at issue in this case:  a "MBO/Key Contributor Bonus" of $5,964.78. (AR 1703.)  Under Cadence's Key Contributor Bonus Plan, the amount of this Bonus was determined based on Powell's work "for the

period January 1, 1995 to June 30, 1995." (AR 1706.) The plan provided that, "in the event of . . . disability, a pro-rata bonus . . . will be paid to the employee." (AR 1706.) Powell was on disability leave for 47 days during the period between January 1, 1995, and June 30, 1995.

On February 14, 2001, Powell wrote to Hartford and requested that it include all the bonuses he had earned prior to becoming disabled – among them the MBO/Key Contributor Bonus – in its calculation of his pre-disability Monthly Income. (AR 688-89.) He requested that the MBO/Key Contributor bonus be prorated over the six-month period in which he earned it. (AR 688.) On May 24, 2001, Powell wrote to Hartford again, this time providing Hartford with a document from Cadence summarizing his "Bonus History" while employed there. (AR 655-56.) When Hartford did not respond, Powell filed a complaint with the California Department of Insurance. (AR 616.) On February 26, 2002, the Department of Insurance wrote to Hartford and demanded that it investigate Powell's claim that his benefit had been incorrectly calculated and inform Powell in writing of the results within 21 days. (AR 616.)

On May 18, 2002, Hartford responded to Powell, copying the Department of Insurance, and explained that it had recalculated Powell's Monthly Benefit to include the bonuses he had received in the year before he became disabled, and that he would now receive a monthly benefit of $3,989.10, based on a Monthly Rate of Basic Earnings of $5,698.95. (AR 602-04.) Hartford also paid Powell corresponding retroactive benefits, with 10% interest. (AR 602-04.) However, in recalculating Powell's monthly benefit, Hartford did not include the several bonuses that Powell earned in the year preceding the onset of his disability, but did not receive until after he became disabled, among them the MBO/Key Contributor Bonus.

In 2005, Hartford ordered a two-day-long Functional Capacity Evaluation of Powell. The evaluator concluded that "it would be difficult for Powell to sustain an 8 hour workday at this time" because of his "need for frequent positional changes, limited ability to sustain use of right dominant upper extremity, and increase in location of and report of pain symptoms experienced in response to the physical demands of testing." (AR 1020.)

3

In 2006, Hartford conducted an investigation of Powell's disability claim, which included surveillance of Powell as he went about his daily activities and an independent expert review of Powell's medical records commissioned by Hartford. (AR 934-43, 2316-34, 2348-55, 2358-63.) The independent expert review did not mention the 2005 Functional Capacity Evaluation, and its conclusions were not supported by Powell's medical records. (AR 934-43, 2166, 2169-70.) Based on its investigation, Hartford determined that Powell no longer qualified for benefits under the policy. In a letter dated April 27, 2007, Hartford terminated his benefits effective April 30, 2007. (AR 927-33.)

On November 29, 2007, Powell, through counsel, filed an appeal of the termination of his benefits with Hartford's appeals unit. (AR 2164.) In the appeal letter, Powell also disputed Hartford's calculation of the benefits to which he was entitled on the ground that it did not include the bonuses Powell had earned in the year prior to the onset of his disability, but did not receive until after becoming disabled. (AR 2164.) On February 20, 2008, Hartford wrote to Powell to inform him that it had reinstated his benefits and recalculated his Monthly Benefit. (AR 156.) The recalculated Monthly Benefit amount was the same as the benefit Powell had received prior to the termination of his claim, $3989.10, and Hartford did not explain why it had not revised its calculation. (AR 156.)

On September 30, 2008, Powell again wrote to Hartford through counsel, requesting that all the bonuses he earned in the twelve months before he became disabled be included in the calculation of his Monthly Rate of Basic Earnings. (AR 1940-44.) After receiving Powell's letter, Hartford reviewed his file and agreed to include the MBO/Key Contributor bonus and one other bonus that Powell received in August 1995, a "Special Achievement Award" in its calculation of his Monthly Rate of Basic Earnings. Hartford refused to include a "Patent Award" that Powell received in December 1997, stating that it did not consider the award a bonus. Hartford recalculated Powell's monthly benefit to be $4,460.36 and paid him retroactive benefits, together with 4.21% interest commencing on November 29, 2007, when Powell first disputed Hartford's March 2002 recalculation of his benefits. (AR 1760.) As

4

part of this calculation, Hartford averaged Powell's MBO/Key Contributor Bonus over twelve months, without explanation.

On March 13, 2009, Powell wrote to Hartford arguing that the MBO/Key Contributor Bonus should be averaged over the six-month period in which he earned it, and that the Patent Award should be included in his Monthly Rate of Basic Earnings.  (AR 1659-60.)  Powell further contended, for the first time, that in calculating his Monthly Benefit, his MBO/Key Contributor Bonus should be prorated to take into account the 47 days he was on disability between January 1, 1995 and June 30, 1995.  (AR 1653.)

On May 21, 2009, Hartford informed Powell that it would not include the Patent Award in its calculation of his Monthly Benefit.  (AR 1475.)  With respect to Powell's request that the MBO/Key Contributor Bonus be averaged over six months, Hartford explained that "unless otherwise specified in the policy, bonuses are averaged over a twelve-month time period."  (AR 1475.)

Powell appealed this determination on June 24, 2009, and on July 20, 2009, Hartford informed him that it had determined that "an adjustment is in order which will include the Patent Award that Mr. Powell received."  (AR 1464, 1450.)  It subsequently sent Powell a check for back benefits.  (AR 123, 1450.)  Hartford did not address Powell's argument with respect to the prorating of his MBO/Key Contributor Bonus over six months (minus 47 days), rather than twelve months.

**CONCLUSIONS OF LAW**

In his motion for summary judgment, Powell argues that Hartford abused its discretion by failing to average his MBO/Key Contributor Bonus over six months (minus 47 days), rather than twelve months.  Powell asks the Court to enter an order directing Hartford to remit to him the underpayment of his benefits, assuming a corrected Monthly Benefit of $5,044.04, together with 10% annual prejudgment interest.  In its motion, Hartford requests that the Court determine that it did not abuse its discretion in averaging Powell's bonus over twelve months.

5

Pursuant to Rule 52(a)(1), the Court states the following conclusions of law:

Because Powell's long-term disability plan grants discretionary authority to Hartford, Hartford's decision to average Powell's bonus over a one-year period rather than a six-month period is subject to abuse of discretion review. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). An administrator's benefits decision is an abuse of discretion if it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks and citation omitted).

When "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (internal quotation marks, citation, and alteration omitted). Hartford, as an entity that "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," is operating under a conflict of interest. *Id.* at 108.

When a conflict of interest is present, a court must take it into account in determining whether the insurer has abused its discretion. *Id.* at 115. "[T]he degree of skepticism with which [courts] regard a plan administrator's decision when determining whether the administrator abused its discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest." *Stephan v. Unum Life Ins. Co. of America*, 697 F.3d 917, 929 (9th Cir. 2012).

Enhanced skepticism is appropriate in the present case because Hartford's conflict of interest tainted much of its decision-making process with respect to Powell's claim. Hartford's 2007 termination of Powell's benefits was based largely on an expert review commissioned by Hartford. The expert's determinations were unsupported by Powell's medical records and disregarded the 2005 Functional Capacity Evaluation that concluded it would be difficult for Powell to sustain an eight-hour workday. Additionally, in calculating Powell's Monthly Benefit, Hartford recalcitrantly excluded bonuses that Powell earned before the onset of his disability, but that were paid to him after he became disabled.

6

Hartford excluded these bonuses despite multiple requests from Powell that it include them, and despite the fact that the exclusion of such bonuses is inconsistent with the policy's definition of Monthly Rate of Basic Earnings, which focuses on an employee's pay rate, rather than pay received prior to the onset of disability. (AR 1727.) *See Stephan*, 697 F.3d at 935-36 (observing that the exclusion of bonuses paid out after the onset of disability would result in "arbitrary distinctions" among claimants based on when they received the bonuses they earned before becoming disabled). Only after receiving multiple requests from Powell and his counsel over a period of eight years did Hartford finally begin to include all of the bonuses Powell earned during the year prior to the onset of his disability in the calculation of his Monthly Benefit. By shortchanging Powell of benefit funds to which he was indisputably entitled, Hartford demonstrated that it prioritizes its own bottom line over its duty, under ERISA, to process claims "solely in the interests of the [plan's] participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

However, it is not clear that Hartford's conflict of interest impacted the decision central to this case – whether to average Powell's MBO/Key Contributor Bonus over six months (minus 47 days), as he requested, or over twelve months. Hartford asserts that it made this decision pursuant to a uniform policy of averaging all bonuses earned in the year prior to the onset of disability over twelve months in calculating the Monthly Rate of Basic Earnings when the insurance policy does not specify otherwise. One of ERISA's purposes is to promote uniformity in benefits administration. *Conkright v. Frommert*, 130 S.Ct. 1640, 1649 (2010). A plan administrator's obligation to "establish and maintain reasonable claims procedures" includes the obligation to ensure that "plan provisions have been applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). There is no evidence suggesting that, as a general practice, Hartford has exploited the ambiguity in the policy language with respect to how to include bonuses in the Monthly Rate of Basic Earnings in order to minimize the amount it is required to pay out in Monthly Benefits to claimants generally.

Even viewing Hartford's decision skeptically, it did not abuse its discretion by averaging Powell's MBO/Key Contributor Bonus over twelve months.  Both Powell's preferred formula of accounting for bonuses and the formula that Hartford chose are reasonable and consistent with the ambiguous policy language.  Powell does not contest Hartford's averaging of his bonuses over a twelve-month period with respect to his quarterly bonuses or the one-time Patent Award he received.  And there is little doubt that had Powell earned his MBO/Key Contributor Bonus in the first six months of the year preceding the onset of his disability, he would, very reasonably, have requested that it be averaged over twelve months and included in Hartford's calculation of his Monthly Rate of Basic Earnings together with the other bonuses.  It is in the interests of a plan's participants and beneficiaries, as well as its administrators, to have a uniform policy with respect to how to account for bonuses in calculating the Monthly Rate of Basic Earnings upon which the Monthly Benefit is based.  Although Hartford's policy of averaging bonuses earned in the year preceding the onset of disability over twelve months is financially advantageous to it in Powell's case, it surely results in higher Monthly Benefit payments for many claimants.  Because Hartford's decision to average Powell's MBO/Key Contributor Bonus over twelve months in calculating his Monthly Rate of Basic Earnings was reasonable and not contrary to the language of Powell's policy, it was not an abuse of discretion.

## CONCLUSION

For the reasons given above, Hartford's motion for summary judgment is GRANTED and Powell's motion for summary judgment is DENIED.  The Clerk of Court shall enter judgment in favor of Hartford.

**IT IS SO ORDERED.**

Dated:   July 11, 2013

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT